# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 6823 | **DATE** | 4/5/2011 |
| **CASE TITLE** | Kathy A. Carpenter vs. Aspen Search Advisers, LLC, et al | | |

**DOCKET ENTRY TEXT**

Enter Written Opinion. Defendants' motion to dismiss Counts III and IV of the Second Amended Complaint [32] is granted in part and denied in part. Count III, the conversion claim, is dismissed as against Defendant Gadomski only. Count IV, the defamation claim, is dismissed for lack of specificity regarding the date, time, and nature of the alleged defamatory statements Counter-Defendants' motions to dismiss [36, 39] are granted in part and denied in part. Count II, the tortious interference claim, survives this motion. Count III, the breach of fiduciary duty claim, is dismissed as preempted by ITSA, and Count IV, the ITSA claim, is dismissed without prejudice for lack of sufficient specific information regarding the nature of Aspen's claimed trade secrets. The parties have leave to file amended claims within 21 days. This case is referred to Magistrate Judge Brown for a settlement conference. Initial disclosures to be made by 5/4/2011; responses by 6/4/2011. Discovery close date 9/30/2011. Rule 16 conference is set before this court on 6/13/2011 at 9:00 AM. (For further details see minute order.)

■[ For further details see text below.]

Notices mailed by Judicial staff.

00:14

## STATEMENT

　　Plaintiff Kathy Carpenter has more than 25 years of sales and account management experience in recruiting. Defendant Aspen Search Advisors LLC is a start-up in the business of "talent acquisition consulting." Defendant Andrew Gadomski is its president. Plaintiff met Gadomski in 2007 and negotiated a business relationship in which Plaintiff worked for Aspen as an independent sales associate and advisor. She signed a confidentiality agreement and agreed to a non-exclusive commission-only compensation structure in which she received 20% as revenue for sales and up to 60% for consulting, as well as enrollment in Aspen's group medical and dental policies in exchange for her work as an independent contractor.

　　Plaintiff alleges that, pursuant to the parties' agreement, Plaintiff introduced Gadomski to her contacts and made cold calls. She also attended numerous meetings and did substantial additional work, reaching out to approximately 2000 companies. Finally in February 2009, the work paid off: Plaintiff landed a consulting engagement between Defendant and Hub International and one between Defendant and PNC Bank. She also established a collaborative partnership between Defendant and other entities. Soon after Plaintiff brought in PNC, however, Gadomski allegedly began excluding Plaintiff from meetings and proposed an "amendment" to the parties' agreement. When she refused to accept the amended terms, Gadomski terminated her. He also falsely advised PNC that she had violated the confidentiality agreement. Plaintiff alleges breach of oral agreement (Count I); and unjust enrichment (Count II) as against Aspen alone, conversion against both Defendants (Count III); and defamation against Defendant Gadomski alone (Count IV).

### Defendants' Motion to Dismiss

　　Defendants have moved to dismiss Counts III and IV. Because Aspen, not Gadomski, had possession and control of the commissions Plaintiff alleges she is owed, Gadomski cannot be liable for conversion of

those commissions.  Counts I through III are dismissed as against Gadomski.

Aspen asks the court to dismiss Count III as against it as well.  In Aspen's view, the "termination of relationship" letter that Plaintiff attached as an exhibit to her complaint establishes that she is entitled to recover commissions only on the condition that she sign a settlement agreement.  (Defendant's Memorandum at 4, citing Exhibit E to Plaintiff's Second Amended Complaint.)  But Plaintiff contends she is entitled to commissions on the strength of the parties' existing oral agreement, and that she had no obligation to compromise other claims in return for payment of those amounts.  The language in the termination letter merely demonstrates that, contrary to Aspen's position, the amount at issue for purposes of the conversion claim is not in fact "speculative, indeterminate, [or] uncertain."  (Defendants' Reply Memorandum [44] at 3.)

Aspen also argues that Illinois case law precludes a conversion claim as the basis for recovery of unpaid commissions, but the court is less certain.  For this proposition, Aspen cites *Cruthis v. Firstar Bank, N.A.*, 354 Ill. App.3d 1122,1131-32, 822 N.E.2d 454, 463-64 (5th Dist. 2004), but that case addresses a conversion claim against a bank and says nothing about commissions.  In *Sandy Creek Condominium Ass'n v. Stolt and Egner, Inc.*, 267 Ill. App.3d 292, 295-96, 642 N.E.2d 171, 175 (2nd Dist. 1994), also cited by Aspen, a condominium association had won a conversion claim against the building managers.  The appellate court reversed on the ground that the amounts plaintiff claimed–uncollected assessments, overcharges for maintenance, and failure to pay rent for use of the laundry facility–did not constitute a specific and identifiable sum of money belonging to plaintiff.  Again, the case does not address the recoverability of commissions, and does not establish that such amounts cannot, as a matter of law, be the target of a conversion claim.  To the contrary, *Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc.,* 346 Ill. App.3d 996, 1003, 806 N.E.2d 280, 285-86 (2nd Dist. 2004) flatly rejected such an argument.  Aspen attempts to distinguish *Bill Marek's* on the ground that the money at issue in this case did not "at all times" belong to Plaintiff and was not sufficiently identifiable, but the unreported district court authority Aspen cites, *McCammon-Chase v. Circle Family Care, Inc.*, 09 C 7450, 2010 WL 2925893 (N.D. Ill., July 23, 2010), is not binding.  In any case, *McCammon-Chase* concluded that plaintiff's conversion claim there was duplicative of her breach of contract claim.  Defendant Aspen in this case has denied that it is a party to an agreement under which Carpenter is entitled to commissions.  (Answer to Amended Complaint [31], ¶ 54.) Her conversion claim is thus properly alleged in the alternative, and Aspen's motion to dismiss Count III is denied.

That leaves Count IV, in which Plaintiff alleges that Defendant Gadomski defamed her by telling a prospective client that Plaintiff had breached a confidentiality agreement.  Gadomski argues that the court has no personal jurisdiction over him and cites the Illinois fiduciary shield doctrine.  That doctrine protects corporate officers from being subject to personal jurisdiction for acts performed on behalf of the employer. Where the corporate officer has some personal interest in engaging in the challenged conduct, the fiduciary shield doctrine may not be available.  *See Femal v. Square D Co.*, 388 Ill. App.3d 132, 140, 903 N.E. 2d 32, 38 (1st Dist. 2009) (concluding that an evidentiary hearing was necessary to determine whether alleged defamation was motivated by the speaker's personal interest, defeating the fiduciary shield defense).  As Defendant argues, however, Plaintiff has not provided any specifics concerning the nature of Gadomski's allegedly defamatory statements or to whom or when they were made.  Without such specifics, the court is unable to determine whether there is a basis to overcome the fiduciary shield doctrine.  Count IV is dismissed without prejudice.

## Counter-Defendants' Motion to Dismiss

The court turns to Aspen's counterclaim.  In a lengthy countercomplaint, Aspen has alleged that Plaintiff Carpenter wronged Aspen by breaching the parties' confidentiality agreement, by interfering with Aspen's expected further business with PNC Bank (Count II); with breach of fiduciary duty (Count III) and with violation of the Illinois Trade Secrets Act (Count IV).  Aspen contends Carpenter engaged in this wrongdoing in part with her business partner, Linda Projansky and HR Pilots, LLC, the business that Carpenter and Projansky established.  Carpenter and her co-counterdefendants, Projansky and HR Pilots have

moved to dismiss.

Counterdefendants challenges the tortious interference claim on the ground that the relationship between Aspen and PNC had been reduced to a contract. *See Delphi Industries, Inc. v. Stroh Brewery Co.*, 945 F.2d 215, 218, 219 (7th Cir. 1991). As the court understands the agreement in question, however, it is no more than a template establishing general terms for all vendors who deal with PNC and does not address the specific mortgage staffing project that Aspen claims it lost. Counterdefendants urge, in the alternative, that Aspen's alleged expectancy "does not appear to be reasonable at all," (Carpenter's Memorandum in Support of Motion to Dismiss [37], at 4), but the court concludes Aspen's allegations of an expectation are adequate. Whether Aspen can establish that its expectation was reasonable is a matter for trial or summary judgment. Counterdefendants' motion to dismiss Count II of the counterclaim is denied.

Counterdefendants are on firmer ground in their challenges to Counts III and IV. Count III alleges that Carpenter breached her fiduciary duty to them, but the fiduciary duty allegedly arises from Carpenter's access to Aspen's confidential data. The fiduciary duty claim is thus preempted by the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 et seq. Whether or not an ITSA claim is supported, the Act preempts related common law claims, such as this one. *See Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992). Count III of the counterclaim is dismissed.

Finally, the court dismisses Count IV, as well, because Aspen's allegations, while lengthy, provide no specifics about the nature of the confidential data for which it claims trade secret protection. A party seeking trade secret protection must do more than "point to broad areas of [information] . . . and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets." *Composite Marine*, 962 F.2d at 1266 , citing *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (7th Cir.1987) (Illinois law); *cf. PepsiCo v. Redmond*, 54 F.3d 1262 (7th Cir. 1995) (observing that AMP, though it predates ITSA, "continues to reflect the proper standard . . . .").

## Conclusion

Defendants' motion to dismiss Counts III and IV of the Second Amended Complaint [32] is granted in part and denied in part. Count III, the conversion claim, is dismissed as against Defendant Gadomski only. Count IV, the defamation claim, is dismissed for lack of specificity regarding the date, time, and nature of the alleged defamatory statements. Should Plaintiff provide such specifics, the court will assess Gadomski's fiduciary shield defense.

Counter-Defendants' motions to dismiss [36, 39] are granted in part and denied in part. Count II, the tortious interference claim, survives this motion. Count III, the breach of fiduciary duty claim, is dismissed as preempted by ITSA, and Count IV, the ITSA claim, is dismissed without prejudice for lack of sufficient specific information regarding the nature of Aspen's claimed trade secrets.

The parties have leave to file amended claims within 21 days. This case is referred to Magistrate Judge Brown for a settlement conference. Rule 16 conference is set before this court on 6/13/2011 at 9:00 AM.